[Cite as *State v. Villolovos*, 2019-Ohio-241.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

State of Ohio

Appellant

v.

Anthony Villolovos
Ronald Boose
Paris Williamson

Appellees

Court of Appeals Nos. L-18-1113
L-18-1114
L-18-1115

Trial Court No. CR0201702858

**DECISION AND JUDGMENT**

Decided:  January 25, 2019

* * * * *

Julia R. Bates, Lucas County Prosecuting Attorney, and
Evy M. Jarrett, Assistant Prosecuting Attorney, for appellee.

Jerome Phillips and Michael H. Stahl, for appellee Anthony Villolovos.

Edward J. Stechschulte, for appellee Ronald Boose.

V. Robert Candiello, for appellee Paris Williamson.

* * * * *

**MAYLE, P.J.**

{¶ 1} In this consolidated appeal, plaintiff-appellant, the state of Ohio, appeals the

June 8, 2018 judgment of the Lucas County Court of Common Pleas, granting motions to

suppress evidence filed by defendants-appellees, Anthony Villolovos, Paris Williamson, and Ronald Boose.  For the reasons that follow, we affirm the trial court judgment.

## I.  Background

{¶ 2} In January of 2017, Toledo police received information from two informants indicating that crack cocaine was being processed and sold by Anthony Villolovos at a residence located at 147 Worthington Street in Toledo, Ohio.  Between January 10 and January 30, 2017, police conducted surveillance of the residence and observed foot and vehicle traffic consistent with drug trafficking.  The Toledo police detective assigned to the case ("the detective") arranged a controlled drug buy through a confidential informant on January 30, 2017, and the next day, applied for and obtained a search warrant permitting a search of the residence and seizure of the following property:

> Any tools, instruments, equipment, or paraphernalia or weapons used to manufacture, store, process, or sell drugs of abuse.  Safes, strongboxes, or lockboxes used to protect or conceal drugs of abuse. Currency of any type or nationality, jewelry, or other items of value. Personal papers, documents, books, financial records, drug transaction records, videotapes, audio cassette tapes, cellular phones, computers and related computer hardware and software all of which are believed to be derived from or instrumental to the trafficking in controlled substances, or the proceeds derived from trafficking in controlled substances.  Papers, documents, or utility records indicating the ownership or occupancy of said

2.

premises. Further photograph and fingerprint, at the scene, any adult subjects found inside the premises for the purpose of comparison to any latent fingerprints found at the scene on drug abuse evidence or any other evidence which is in violation of **2925.03, 2925.11, 2925.12, 2925.13 of the OHIO REVISED CODE**.

{¶ 3} The search warrant was executed on February 3, 2017, at which time it was brought to the detective's attention that there were numerous security cameras attached to the outside of the residence and a digital video recorder ("DVR") hooked up to a monitor in Villolovos's bedroom. One of these exterior cameras was pointed in the direction of narcotics that were located outside the house, between it and the neighboring residence. Two cameras and the DVR were seized during the search, and on February 7, 2017, the detective applied for and obtained a second search warrant permitting him to view any "photographs, stills, sound, images, and video footage" contained on what was described as the "1 Swann Surveillance Camera DVR (SWDVR-83250H) (S/NO: 2761905144684)" ("the DVR system").

{¶ 4} On October 24, 2017, Villolovos was indicted on charges of trafficking in heroin, in violation of R.C. 2925.03(A)(2) and (C)(6)(c); possession of heroin, in violation of R.C. 2925.11(A) and (C)(6)(b); and possession of cocaine, in violation of R.C. 2925.11(A) and (C)(4)(a). Ronald Boose was charged with trafficking in heroin; possession of heroin; aggravated trafficking in drugs, in violation of R.C. 2925.03(A)(2) and (C)(1)(c); and aggravated possession of drugs, in violation of R.C. 2925.11(A) and

3.

(C)(1)(b). Paris Williamson was charged with trafficking in heroin; possession of heroin; trafficking in marijuana, in violation of R.C. 2925.03(A)(2) and (C)(3)(c); and possession of marijuana, in violation of R.C. 2925.11(A) and (C)(3)(c).

{¶ 5} Villolovos, Boose, and Williamson ("appellees") each moved the court to suppress the DVR system. They argued that (1) the January 31, 2017 search warrant made no mention of security equipment or cameras, thus the officers executing the search warrant exceeded the scope of the warrant when they seized that equipment; and (2) the February 7, 2017 affidavit for search warrant provided no factual basis for the detective's belief that additional evidence would be located on the DVR system.

{¶ 6} The state responded that the DVR system was within the purview of the items described in the search warrant under the categories of "computers and related computer hardware and software," "video tapes," and "drug transaction records." It also argued that even if the DVR system was not described in the search warrant, it was validly seized because it was within plain view, and based on the factual description contained in the February 7, 2017 affidavit for search warrant, it would be reasonable for the issuing magistrate to infer that the DVR contained digital video recordings of drug trafficking activity. And in any event, the state argued, the evidence seized should be spared from exclusion under the good-faith exception to the exclusionary rule because no reasonably well-trained detective would have suspected that the search warrants were defective.

4.

**{¶ 7}** Following a hearing at which the detective testified, the trial court granted appellees' motions. It issued findings of fact and conclusions of law explaining the rationale for its decision. It concluded that "the failure to specify the camera and DVR in the warrant and/or the supporting affidavit made these documents insufficient to support the seizure of the camera and DVR." It also concluded that the "plain view" doctrine was inapplicable because the incriminating nature of the evidence seized was not immediately apparent. The court did not specifically address the state's argument that the evidence should be spared by the good-faith exception to the exclusionary rule.

**{¶ 8}** The state appealed and assigns the following errors for our review:

I. The trial court erred by holding that the search warrant did not specify that a camera and DVR could be seized, rather than ascertaining whether the search warrant's list of items, reasonably interpreted and restricted to the offense of drug trafficking, included the camera and DVR.

II. When executing a search warrant, officers may seize items in plain view which they have probable cause to believe are associated with criminal activity, and the items seized need not be contraband.

III. The exclusionary rule should not be applied when an officer seizes items in reliance on the wording of a search warrant.

## II. Law and Analysis

**{¶ 9}** In its first assignment of error, the state argues that the DVR system was properly seized as "drug transaction records," "video tapes," or "computers and related

hardware and software" instrumental in drug trafficking, or as "tools, instruments, equipment, or paraphernalia" used to store drugs. In its second assignment of error, it argues that the DVR system was properly seized under the plain-view doctrine because it was in the officers' plain view during execution of the search warrant and the officers could reasonably conclude that the equipment recorded access to a cache of stored drugs. And in its third assignment of error, it argues that the DVR system should not be excluded pursuant to the good-faith exception to the exclusionary rule.

{¶ 10} Before examining the state's assignments of error, we summarize the testimony of the lead detective assigned to the case, the only witness to testify at the suppression hearing. The detective explained that before applying for the January 31, 2017 search warrant, he conducted surveillance of the property during the month of January. He testified that during his surveillance, he never observed any outside security cameras and his informants never made him aware of the existence of security cameras. The detective indicated that it would be important to know whether there were security cameras because this is something he would be required to tell the SWAT team so that it could appropriately plan its approach in executing the search warrant. He described it as a safety issue for the SWAT team.

{¶ 11} When the search warrant was executed, however, multiple cameras were discovered around the perimeter of the property. One of the cameras was pointed directly at a stash of drugs located outside the house. After discovering the security cameras, the detectives executing the warrant came upon a DVR in Villolovos' bedroom, attached to a

6.

monitor. The detective made the decision to seize it, and upon viewing the contents of the DVR—which he did after obtaining a second warrant permitting him to do so—he discovered that video from the cameras was stored on it and the DVR contained software that allowed him to select which cameras he wished to review and for which dates and times. He conceded that he did not know what was on the DVR system at the time he seized it. He also conceded that he had never observed drug activity in the area between the houses where the drugs were stored.

{¶ 12} The detective testified that he is familiar with the constraints of the Fourth Amendment and is aware that he is required to particularly describe the items to be seized. He explained that in applying for the January 31, 2017 search warrant, he used a template that specified particular items routinely requested when performing searches in drug cases. He did not specifically request to seize a security system or DVR. He indicated that he believed that the DVR system and camera fell into the classification of "[p]ersonal papers, documents, books, financial records, drug transaction records, videotapes, audio cassette tapes, cellular phones, computers and related computer hardware and software all of which are believed to be derived from or instrumental to the trafficking in controlled substances, or the proceeds derived from trafficking in controlled substances."

{¶ 13} The detective said that he did not know in advance whether the DVR system would contain evidence that would assist with his investigation. He explained that while the cameras themselves recorded nothing, he seized "one or two" of them in

7.

case evidence was found on the DVR. He was asked how he knew that the DVR system was recording for the cameras located outside the house. He responded simply that it was the only DVR that was located that was brought to his attention.

{¶ 14} The trial court found that there was no "inherent nor patent connection between ***this*** DVR and illegal drug activity" and no "inherent nor patent connection between ***any*** DVR that makes such a device 'instrumental' to illegal drug trafficking." (Emphasis in original.) It concluded that appellees' "constitutional rights were violated because the surveillance camera and DVR were not stated with sufficient particularity in the January 31, 2017 search warrant" and "the warrant documents failed to describe either item in a manner so that an 'officer [could] identify them to be seized.'" The court further found that the plain-view doctrine did not apply to prevent exclusion of the evidence because the incriminating nature of the camera and DVR system were not immediately apparent.

{¶ 15} We now turn to the state's assignments of error. "Appellate review of a motion to suppress presents a mixed question of law and fact." *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. When the trial court considers a motion to suppress, it acts as the factfinder and is in the best position to resolve factual questions and to evaluate the credibility of witnesses. *Id.* We, therefore, must accept the trial court's findings of fact if they are supported by competent, credible evidence. *Id.* Our role then is to independently determine, without deference to the trial court's conclusion, whether the facts satisfy the applicable legal standard. *Id.*

8.

## A. Scope of the Search Warrant

{¶ 16} In its first assignment of error, the state argues that the trial court erred by holding that the camera and DVR system were not specified in the search warrant, instead of ascertaining whether the search warrant's list of items, when reasonably interpreted in the context of a drug-trafficking offense, included the camera and DVR system.

{¶ 17} There is no dispute here that the warrant did not specifically authorize seizure of "security cameras," or "DVRs." However, the state maintains that the DVR system falls under the rubric of a number of categories listed in the search warrant. Specifically, it argues that the DVR system is (1) a "drug transaction record," because it is a recording of individuals accessing a stash of drugs; (2) a "computer [or] related computer hardware and software," because the DVR stores video as data on a hard drive; (3) a "video tape," a word colloquially used to refer to any video recording; and (4) an "instrument, equipment, or paraphernalia" used to store drugs, because, as the detective testified, a surveillance camera was trained on the drugs stored outside the house. It insists that the trial court erred by focusing on whether the search warrant explicitly referenced the camera and DVR system instead of considering whether the items fell into any of these categories.

{¶ 18} The state also contends that even though not explicitly referenced in the search warrant, the camera and DVR system were properly seized as items closely related to the offense under investigation. Quoting our decision in *State v. Kobi*, 122 Ohio

9.

App.3d 160, 171, 701 N.E.2d 420 (6th Dist.1997), it insists that we have allowed seizure of items not specifically listed in a search warrant where "the seized items were closely related to the crime being investigated or were instrumentalities of the crime."

{¶ 19} Appellees claim that the state is trying to "shoehorn" the DVR system into generalized, boilerplate language contained in the warrant. They urge that the Fourth Amendment particularity requirement may not be defeated by characterizing the language in the warrant as a mere colloquialism. And they argue that if the detective really believed that he was authorized to seize the DVR system, he would not have needed to apply for the second warrant authorizing him to view the contents of the DVR system.

{¶ 20} Appellees also point out that the court found no inherent or patent connection between the DVR system and illegal drug activity, and they emphasize that in reaching this conclusion, the trial court found it significant that the DVR was not actually connected to any of the cameras and there was no way to tell whether the camera or DVR had anything at all to do with illegal drug activity. They argue that a DVR system is not instrumental in drug trafficking and before its seizure and subsequent search, it could not be shown to have been a tool used in the storage or manufacture of illegal drugs. Appellees criticize the detective's failure to include the DVR and cameras in the application for the search warrant—despite the fact that they were located outside and were not camouflaged or obscured in any way—and they question the quality of the surveillance work performed in this case.

10.

{¶ 21} The Fourth Amendment to the United States Constitution protects against unreasonable searches and seizures and generally requires that a warrant be obtained "particularly describing the place to be searched and the person and things to be seized." Article I, Section 14 of the Ohio Constitution "is nearly identical in its language" and in its protections. *State v. Kinney*, 83 Ohio St.3d 85, 87, 698 N.E.2d 49 (1998). The purpose of this requirement is to "[limit] the authorization to search to the specific areas and things for which there is probable cause to search [and to ensure] that the search will be carefully tailored to its justifications, and will not take on the character of the wide-ranging exploratory searches the Framers intended to prohibit." *Kinney* at 91, quoting *Maryland v. Garrison*, 480 U.S. 79, 84, 107 S.Ct. 1013, 94 L.Ed.2d 72, 80 (1987).

{¶ 22} The permissible scope of a search is defined by the terms of the search warrant itself. *State v. Wangler*, 3d Dist. Allen No. 1-11-18, 2012-Ohio-4878, ¶ 34. To that end, search warrants must be strictly construed in both their application and creation. *State v. Strzesynski*, 6th Dist. Wood No. WD-85-68, 1986 Ohio App. LEXIS 6402, *5 (Apr. 18, 1986). "As to what is to be taken, nothing is left to the discretion of the officer executing the warrant." *State v. Castagnola*, 145 Ohio St.3d 1, 2015-Ohio-1565, 46 N.E.3d 638, ¶ 89, quoting *Marron v. United States*, 275 U.S. 192, 196, 48 S.Ct. 74, 72 L.Ed. 231 (1927). "If the scope of the search exceeds that permitted by the terms of a validly issued warrant * * *, the subsequent seizure is unconstitutional without more." *Id.* at ¶ 33, quoting *Horton v. California*, 496 U.S. 128, 140, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990).

11.

{¶ 23} Here, we agree with appellees that to characterize the DVR system as a "drug transaction record," "computer [or] related computer hardware and software," "video tape," or "instrument, equipment, or paraphernalia * * * used to store * * * drugs" would require us to shoehorn the evidence into one of these general, ill-fitting categories. The DVR system simply does not fit naturally into any of the general categories specified in the warrant.

{¶ 24} Additionally, we find that the detective's testimony was insufficient to establish that the DVR system was "derived from or instrumental to" drug trafficking, as specified by the warrant. *See State v. Bangera*, 2016-Ohio-4596, 70 N.E.3d 75, ¶ 50 (11th Dist.). First, we note that there were multiple cameras positioned around the perimeter of the property—not just focused on the drugs. The detective acknowledged that people use security systems to secure their property from break-ins, and he agreed that people do not normally have security cameras to record their criminal activity.

{¶ 25} Moreover, when asked how he knew that the DVR system was recording for the cameras located outside the home, the detective provided no specific information other than saying that it was the only DVR that was brought to his attention. He was unable to say that the DVR system, which was found in a bedroom, was connected to the exterior camera that was pointed at the drugs, and he did not know whether the DVR system had recorded anything at all—let alone that it was "instrumental" to drug trafficking. For this same reason, we find the state's reliance upon *Kobi*, 122 Ohio App.3d 160 at 171, 701 N.E.2d 420, misplaced. The detective's testimony was

12.

insufficient to establish any relationship—let alone a close relationship—between the DVR system and the crime being investigated.

{¶ 26} Accordingly, we conclude that officers exceeded the scope of the warrant when they seized the DVR system. We find the state's first assignment of error not well-taken.

### B. The Plain-View Doctrine

{¶ 27} In its second assignment of error, the state argues that even if the DVR system was not properly seized under the warrant, it was properly seized under the plain-view doctrine. "The plain view doctrine allows police officers, under particular circumstances, to seize an 'article of incriminating character' which is not described in their search warrant." *State v. Halczyszak*, 25 Ohio St.3d 301, 303, 496 N.E.2d 925 (1986).

{¶ 28} "In order for evidence to be seized under the plain view exception to the search warrant requirement it must be shown that (1) the initial intrusion which afforded the authorities the plain view was lawful; (2) the discovery of the evidence was inadvertent; and (3) the incriminating nature of the evidence was immediately apparent to the seizing authorities." *State v. Williams*, 55 Ohio St.2d 82, 82, 377 N.E.2d 1013 (1978), paragraph one of the syllabus.

{¶ 29} Appellees argue that the state may not rely on the plain-view doctrine here because the incriminating nature of the DVR system was not immediately apparent at the time it was seized. The Supreme Court of Ohio has explained that "[t]he 'immediately

13.

apparent' requirement of the 'plain view' doctrine is satisfied when police have probable cause to associate an object with criminal activity." *Halczyszak* at paragraph three of the syllabus. "In ascertaining the required probable cause to satisfy the 'immediately apparent' requirement, police officers may rely on their specialized knowledge, training and experience[.]" *Id.* at paragraph four of the syllabus.

{¶ 30} In *State v. Powell*, 2d Dist. Montgomery No. 18095, 2000 Ohio App. LEXIS 5829 (Dec. 15, 2000), police investigating the rape of a teenaged girl seized a camcorder and videotape from the defendant's business—items not contained in the search warrant. The Second District concluded that the camcorder and tape could not be seized under the plain-view doctrine because it was not immediately apparent to the police officers that the videotape inside the camcorder contained evidence associated with the alleged rape and kidnaping of the victim. It found that "there was no probable cause present during the search that the camcorder contained evidence related to the crimes being investigated," and "[a]t best the officers possessed merely suspicion that the camcorder and tape would provide additional evidence of [the defendant's] guilt." *Id.* at *17.

{¶ 31} The same is true here. The detective admitted at the suppression hearing that he had no idea what was on the DVR system when he seized it. He further conceded that he had not observed drug trafficking activity in the particular spot where the camera was pointed. Under these facts, it cannot be said that the incriminating nature of the evidence was immediately apparent, therefore, the plain-view doctrine is inapplicable.

14.

**{¶ 32}** We find the state's second assignment of error not well-taken.

### C. The Good-Faith Exception to the Exclusionary Rule

**{¶ 33}** Finally, in its third assignment of error, the state argues that the exclusionary rule should not be applied here because the officers relied in good faith on the wording of the search warrant in seizing the DVR system. It claims that a reasonably well-trained officer who had in the past seized similar equipment was permitted to rely on the language of the search warrant in seizing the DVR system here.

**{¶ 34}** The suppression of evidence "is not an automatic consequence of a Fourth Amendment violation." *State v. Hoffman*, 141 Ohio St.3d 428, 2014-Ohio-4795, 25 N.E.3d 993, ¶ 24. "The exclusionary rule is a judicially created remedy for Fourth Amendment violations." *Castagnola*, 145 Ohio St.3d 1, 2015-Ohio-1565, 46 N.E.3d 638, at ¶ 92, citing *United States v. Calandra*, 414 U.S. 338, 348, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974). Whether evidence has been seized in violation of the Fourth Amendment and whether that evidence should be excluded are two separate issues. *Id.*, citing *United States* v. *Leon*, 468 U.S. 897, 906, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984).

**{¶ 35}** The purpose of the exclusionary rule is to deter police misconduct." *Id.* at ¶ 96. The good-faith exception to the exclusionary rule is premised on the notion that where officers act in objective good faith, there is no misconduct to deter. *Id.* In determining whether or not to apply the good-faith exception, the question is "'whether a reasonably well trained officer would have known that the search was illegal * * *.'" *Id.* at ¶ 93.

15.

{¶ 36} The exception to the exclusionary rule specifically applies where "'an officer acting with objective good faith has obtained a search warrant from a judge or magistrate *and acted within its scope*.'" (Emphasis added.) *State v. Gough*, 35 Ohio App.3d 81, 83, 519 N.E.2d 842 (5th Dist.1986), quoting *Leon* at 920. Here, however, we have concluded that the officers acted *outside the scope* of the search warrant when they seized the DVR system.

{¶ 37} The detective testified that he was aware that under the Fourth Amendment, he needed to describe with particularity the items to be seized. He admitted that he was not aware of the existence of the DVR system, and the warrant, therefore, did not specify the system among the items to be seized. While the detective testified that he believed that the items constituted "[p]ersonal papers, documents, books, financial records, drug transaction records, videotapes, audio cassette tapes, cellular phones, computers and related computer hardware and software all of which are believed to be derived from or instrumental to the trafficking in controlled substances, or the proceeds derived from trafficking in controlled substances," we are not persuaded by this post hoc justification for seizing the DVR system. We are also not persuaded that the detective's seizure of similar items in the past rendered it reasonable for him to believe that he was authorized to do so in the present case.

{¶ 38} Accordingly, we conclude that the detective could not have in good faith relied on the language of the January 31, 2017 warrant as authorizing seizure of the DVR

16.

system, thus the good-faith exception to the exclusionary rule is inapplicable. We find the state's third assignment of error not well-taken.

### III. Conclusion

{¶ 39} The DVR system was not specified among the items to be seized under the January 31, 2017 search warrant and did not fit naturally into any of the general categories of items authorized to be seized under the warrant. Moreover, the testimony did not establish that the evidence was "derived from or instrumental to the trafficking in controlled substances." We find the state's first assignment of error not well-taken.

{¶ 40} The evidence was not properly seized under the plain-view exception to the warrant requirement because the incriminating nature of the evidence was not immediately apparent. The detective did not know what, if anything, was recorded on the DVR or whether the DVR was even connected to the camera that was directed toward the drug stash. We find the state's second assignment of error not well-taken.

{¶ 41} Finally, the evidence cannot be spared under the good-faith exception to the exclusionary rule because the detective conceded that the DVR system was not specified in the search warrant among the items to be seized, and a reasonably well-trained officer would have known that the wording of the warrant did not encompass the DVR system. We find the state's third assignment of error not well-taken.

17.

**{¶ 42}** Accordingly, we affirm the June 8, 2018 judgment of the Lucas County Court of Common Pleas. The state is ordered to pay the costs of this appeal under App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Thomas J. Osowik, J.                                                    

_____
JUDGE

James D. Jensen, J.

Christine E. Mayle, P.J.
CONCUR.

_____
JUDGE

_____
JUDGE

This decision is subject to further editing by the Supreme Court of
Ohio's Reporter of Decisions. Parties interested in viewing the final reported
version are advised to visit the Ohio Supreme Court's web site at:
http://www.supremecourt.ohio.gov/ROD/docs/.