[Cite as *State v. Williams*, 2025-Ohio-2331.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

State of Ohio                                           Court of Appeals No.  L-24-1113

       Appellee                               Trial Court No.  CR-2023-1737

v.

Delbert Williams                                       **<u>DECISION AND JUDGMENT</u>**

       Appellant                              Decided: July 1, 2025

* * * * *

Julia R. Bates, Lucas County Prosecuting Attorney, and
Evy M. Jarrett, Assistant Prosecuting Attorney, for appellee.

Erin Branham and Joseph Patituce, for appellant.

* * * * *

**OSOWIK, J.**

{¶ 1}   After the trial court overruled his motion to suppress, the defendant-appellant, Delbert Williams, pled no contest in the Lucas County Court of Common Pleas to an amended charge of trafficking in cocaine.  The trial court found him guilty and sentenced him to an indefinite term of a minimum of three years, to a maximum of four-and-a-half years, in prison.  On appeal, Williams claims that the trial court erred in overruling his motion to suppress and that his plea was entered involuntarily.  As set forth below, we affirm the trial court's decision to

deny Williams's motion to suppress.   However, because we find that the trial court failed to strictly comply with Crim.R. 11(C)(2)(c), we vacate the plea and remand for further proceedings.

## I. Background

{¶ 2}   Williams was indicted on May 16, 2023, for trafficking and possession of cocaine, both first degree felonies.  Williams's arrest followed a search by police of 3508 Hilltop Blvd, Apartment 4, in Toledo.

{¶ 3}   On December 9, 2021, Detective Ashley Paszczykowski of the Toledo Police Department sought a warrant in the Toledo Municipal Court to search the Hilltop apartment and two vehicles—a white Dodge Nitro and a red Chrysler 300—for, among other things:  cocaine or other controlled substances; tools, equipment, or weapons used to manufacture, process, store, or sell drugs; financial records, drug transaction records, cellphones, or computers; and documents or utility records showing ownership or occupancy of the property.

{¶ 4}   The affidavit describes a six-month investigation conducted by Detective Paszczykowski and members of the Toledo Police Vice/Narcotics Unit.  Detective Paszczykowski (a.k.a "the affiant") averred that, based on her "personal observations, [her] training, education, experience and information obtained from other detectives and witnesses[,]" there was probable cause to believe that Williams, and two colleagues ["C.L." and "W.L."], were engaged in drug trafficking and were concealing cocaine at the Hilltop apartment and in the identified vehicles.  Detective Paszczykowski also relied upon a "very reliable" confidential

2.

informant ("CI") who provided "specific information" that was "independently verified" and who has provided information that "has never proven to be false."

{¶ 5} Most of the averments in the 18-paragraph affidavit pertaining to Williams and his colleagues involve their activities at locations *other than* the Hilltop apartment. A summary of those averments, that are specific to Williams, is set forth below.

> In July of 2021, the CI reported to Detective Paszczykowski that Williams "sells Cocaine" from the home located at 1013 Waverly Avenue and that "there are various firearms in the home."
> Utilizing the NORIS/LEADS database, Detective Paszczykowski conducted a records search and "found Williams. . . bearing an address of 1013 Waverly Avenue."
> A controlled drug buy was scheduled to take place on July 28, 2021 between the CI and Williams. On that day, the CI called Williams to purchase cocaine, and Williams instructed that the CI come to 1013 Waverly Avenue. Police surveillance was set up at the Waverly location. Williams met the CI at the back door of the home and "a hand-to-hand drug transaction occurred." The CI "returned direct" to Detective Paszczykowski with a substance that tested positive for the presence of cocaine.
> On August 16, 2021 and again in "September 2021," the CI reported to Detective Paszczykowski that "Williams is still selling cocaine out of 1013 Waverly" and that firearms were also observed in that residence "with Williams."
> In October of 2021, the CI reported to Detective Paszczykowski that Williams was at 1013 Waverly "selling" cocaine and that "Guns, residue and scales were also observed in the house."
> A second controlled drug buy was arranged by the CI on October 11, 2021 at a "predetermined location." On that day, the CI "made a phone call to WILLIAMS to purchase cocaine. WILLIAMS met with the CI and a hand to hand transaction was observed." The "white chunky substance" that the CI provided to Detective Paszczykowski tested positive for the presence of cocaine.
> "During the month of November 2021," the CI reported to the affiant that "WILLIAMS had a large amount of drugs on his person and that [he] had a new phone number," which the CI provided to Detective Paszczykowski.
> On November 30, 2021, Detective Paszczykowski was conducting surveillance of 1013 Waverly and observed Williams there. The detective observed Williams "exit" the driver's seat of the white Dodge Nitro and "[leave] the location" in the red Chrysler 300.

3.

{¶ 6} The final three paragraphs of the affidavit refer to "Hilltop" location by name and are set forth below, in their entirety:

16.) On or about December 1, 2021, this affiant along with other members of the Toledo Police VICE Narcotics Unit observed the Red, 2013 Chrysler 300 parked in the parking lot of 3508 Hilltop Blvd. A short time later, WILLIAMS, exited the apartment complex, marked with the address of 3508 Hilltop, Units 1 through 4 marked on the outside door. WILLIAMS entered the driver's seat of the above vehicle. This affiant and other members of the Toledo Police VICE Narcotics Unit conducted mobile surveillance on WILLIAMS and the vehicle. WILLIAMS was observed doing multiple hand to hand transactions from the listed vehicle.

17.) On December 2, 2021, this affiant along with other Toledo Police VICE Narcotics Detectives, working in an undercover capacity, observed WILLIAMS enter and exit 3508 Hilltop, Apartment 4. Undercover detectives observed trash put out for refuge in the hallway outside the door of apartment 4. Attached to the refuge [SIC] was a receipt with, "Williams and the phone number [REDACTED]." The phone number is the same phone number provided by the CI, in which they contact WILLIAMS.

18.) On December 9, 2021, this affiant was conducting surveillance at 1013 Waverly and observed [C.L.] enter the front door of the home. A short time later [C.L.] exited the front door of the home and entered the driver's seat of a Cadillac bearing Ohio Plate JBB 6261. Members of the Toledo Police Vice Narcotics unit were conducting surveillance on 1013 Waverly and observed multiple people and vehicles coming and going from the location and only staying for short periods of time. This pattern of activity is consistent with the trafficking of narcotics. WILLIAMS was observed leaving 1013 Waverly carrying a bag. Williams went directly to 3508 Hilltop Blvd. and entering the apartment carrying the same bag.

{¶ 7} Later that day, December 9, 2021, Detective Paszczykowski submitted the affidavit to the municipal court, and the search of 3508 Hilltop Blvd, Apartment 4 was conducted that same day.

4.

{¶ 8} Following his indictment, Williams moved to suppress the evidence gathered there. He argued that there was insufficient information contained in the affidavit that would provide a substantial basis for concluding that probable cause existed for the search of the Hilltop apartment.

{¶ 9} The trial court agreed. It found, while it was "clear" that defendant Williams had a "connection" to 3508 Hilltop, Apartment 4, there was no evidence alleging that there would be contraband there. But, while the court found that the affidavit was insufficient to establish probable cause to support the issuance of the search warrant to search, it found that the "good faith exception" applied to the circumstances of this case and therefore, that the evidence should not be excluded. On November 7, 2023, it denied Williams's motion to suppress.

{¶ 10} A change-of-plea hearing was held on February 20, 2024. At that time, Williams pled no contest to an amended charge in Count 1 of trafficking in cocaine, in violation of R.C. 2925.09(A)(2) and (C)(4)(e), a felony of the second degree. In exchange, the State agreed not to prosecute the possession charge set forth in Count 2. The trial court sentenced Williams to an indefinite term of a minimum of three years, to a maximum of four-and-one-half years, in prison. The court immediately stayed the execution of sentence, pending resolution of Williams's appeal. Williams raises two assignments of error for our review:

> ASSIGNMENT OF ERROR 1: The trial court erred in denying Mr. Williams' Motion to Suppress after finding that, although no probable cause existed to support the issuance of the search warrant, the good faith exception applied.

5.

ASSIGNMENT OF ERROR 2: The trial court did not strictly comply with the Rule 11(C)(2)(c) requirements at Mr. Williams' plea hearing.

## II. The Motion to Suppress

{¶ 11} In his first assignment of error, Williams claims that the trial court erred in denying his motion to suppress.

{¶ 12} "Appellate review of a motion to suppress presents a mixed question of law and fact." *State v. Villolovos,* 2019-Ohio-241, ¶ 15 (6th Dist.), quoting *State v. Burnside,* 2003-Ohio-5372, ¶ 8. When the trial court considers a motion to suppress, it acts as the factfinder and is in the best position to resolve factual questions and to evaluate the credibility of witnesses. *Id.* We, therefore, must accept the trial court's findings of fact if they are supported by competent, credible evidence. *Id.* Our role then is to independently determine, without deference to the trial court's conclusion, whether the facts satisfy the applicable legal standard. *Id.*

{¶ 13} The Fourth Amendment to the United States Constitution protects against unreasonable searches and seizures and generally requires that a warrant be obtained "particularly describing the place to be searched and the person and things to be seized." Article I, Section 14 of the Ohio Constitution "is nearly identical in its language" and in its protections. *State v. Kinney*, 83 Ohio St.3d 85, 87 (1998). The purpose of this requirement is to "[limit] the authorization to search to the specific areas and things for which there is probable cause to search [and to ensure] that the search will be carefully tailored to its justifications, and will not

6.

take on the character of the wide-ranging exploratory searches the Framers intended to prohibit." *Kinney* at 91, quoting *Maryland v. Garrison*, 480 U.S. 79, 84 (1987); Crim.R. 41(C).

**A**. **Probable Cause**

{¶ 14} Probable cause exists when a reasonably prudent person would believe that a fair probability exists that the place to be searched contains evidence of a crime.  *State v. George*, 45 Ohio St.3d 325 (1989), paragraph one of the syllabus.   "[I]t is clear that 'only the probability, and not a prima facie showing, of criminal activity is the standard of probable cause.'" (Emphasis omitted.)  *George* at 329, quoting *Illinois v. Gates*, 462 U.S. 213, 235 (1983). Consequently, probable cause "is not a high bar."  *State v. Hobbs*, 2018-Ohio-4059, ¶ 35 (4th Dist.), quoting *Dist. of Columbia v. Wesby*, 138 U.S. 577, 586 (2018).

{¶ 15} A trial court properly finds probable cause for a search so long as the "totality of the circumstances" leads to the conclusion that contraband or evidence is likely located in a particular place. *Gates* at 230.  This finding is often described as a "practical, nontechnical conception," a "process [that] does not deal with hard certainties, but with probabilities," and one which requires the magistrate or judge to simply "make a common-sense decision" resting on a "substantial basis," not on a "loose, vague, or doubtful bas[i]s of fact." *Gates* at 230-39.  At a minimum though, "[t]he affidavit supporting the search warrant must set forth adequate facts to establish a nexus between the place to be searched and the evidence sought, which depends on the facts and circumstances of each individual case."  *State v. Lang*, 2023-Ohio-2026, ¶ 19 (1st Dist.), citing *Hobbs* at ¶ 58 (4th Dist.); *see also United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004) (en banc).  "Accordingly, where police officers apply for a warrant to search

7.

the home of a suspected drug dealer, the supporting affidavit must, under the totality of the circumstances, establish a nexus between the defendant's criminal activity and his residence sufficient to raise a fair probability that evidence of criminal activity will be found there." *State v. Johnson,* 2024-Ohio-1147, ¶ 15 (1st Dist.), *appeal not allowed,* 2024-Ohio-2718, ¶ 15, citing *Lang* at ¶ 19, citing *State v. Howard*, 2023-Ohio-4618, ¶ 20, 24 (1st Dist.).

{¶ 16} A reviewing court, which includes a trial court ruling on a motion to suppress, as well as an appellate court, must give "great deference" to the magistrate's probable-cause determination. *George* at 329-330. "[A]fter-the-fact scrutiny by the courts of the sufficiency of an affidavit should not take the form of de novo review." *Id.* at 329, quoting *Gates* at 236. Our duty is to ensure that the issuing magistrate had a substantial basis for concluding that probable cause existed. *Id.* at paragraph two of the syllabus. "[D]oubtful or marginal cases . . . should be resolved in favor of upholding the warrant." *Id.,* citing *Illinois v. Gates.*

{¶ 17} "[W]hen no oral testimony is presented to the neutral and detached magistrate in conjunction with an affidavit for a search warrant, the probable-cause determination is based on the four corners of the document." *State v. Castagnola*, 2015-Ohio-1565, ¶ 106. Likewise, the reviewing court "'is concerned exclusively with the statements contained within the affidavit itself.'" *Id.* at ¶ 39, quoting *United States v. Weaver,* 99 F.3d 1372, 1378 (6th Cir. 1996).

{¶ 18} Here, in reaching its conclusion—that the affidavit was insufficient to establish probable cause to support the issuance of the warrant to search 3508 Hilltop, Apartment 4—the trial court emphasized that "*only two paragraphs* [of the 18-paragraph affidavit] reference the address which is the subject matter of this search warrant." (Nov. 8, 2023 J.E. at 1; emphasis

8.

added.)  The court continued that, although there is an "averment that the defendant, while seated in a vehicle in the parking lot of 3508 Hilltop was 'observed doing multiple hand to hand transactions from a vehicle,'" the transactions were not to a "known and reliable confidential informant."  *Id.,* quoting Affidavit for Search Warrant.  Moreover, there was no evidence that police observed "money being exchanged" or any suggestion that the hand-to-hand transactions "look[ed] like the transfer of drugs."  Accordingly, the trial court determined that the averments were "too sparce" to infer that they were drug transactions *and* even if it was reasonable to make the inference, "the court could not properly then infer that there would be contraband *in[side]* 3508 Hilltop apartment 4," despite the fact that Williams was "observed entering and exiting" the apartment and paperwork from the trash pull connecting him there.  (Emphasis added.)

{¶ 19} Upon review, we note a *third* paragraph in the affidavit—which the trial court did not specifically mention—refers to "3508 Hilltop Blvd."  In ¶ 18, Detective Paszczykowski details surveillance she conducted one week *after* police had connected Williams to the Hilltop apartment.  That is, on December 9, 2023, Detective Paszczykowski and other members of the Vice Narcotics Unit observed "multiple people and vehicles coming and going from [1013 Waverly] and only staying for short periods of time [which is] consistent with trafficking of narcotics.  *WILLIAMS was observed leaving 1013 Waverly carrying a bag.  Williams went directly to 3508 Hilltop Blvd. and entering the apartment building carrying the same bag*."  (Emphasis added.)  The search warrant was obtained and served later that day.

{¶ 20} In its response brief, the State argues that "the totality of the circumstances supported a finding of probable cause," and it urges this court to uphold the search warrant on

9.

that basis. Williams counters that the State waived its probable cause argument for failing to file a notice of cross-appeal, as required by App.R. 3(C)(1) ("an appellee who seeks to change the order . . . shall file a notice of cross appeal with the clerk of the trial court").

{¶ 21} "An appellee who does not cross-appeal generally cannot oppose the final judgment on appeal, or attack it to enlarge his own rights or lessen the rights of his adversary." *Kaplysh v. Takieddine,* 35 Ohio St.3d 170, 175 (1988); App.R. 3(C)(1). However, "without filing a cross-appeal, an appellee can 'urge in support of a decree any matter appearing in the record, *although his argument may involve an attack upon the reasoning of the lower court* or an insistence upon a matter overlooked or ignored by it.'" (Emphasis added.) *Id.* at 175, quoting *United States v. American Ry. Express Co.*, 265 U.S. 425, 435 (1924); App.R. 3(C)(2) ("A person who intends to defend an order appealed by an appellant on a ground other than that relied on by the trial court but who does not seek to change the order is not required to file a notice of cross-appeal or to raise a cross-assignment of error.") Here, the State claims that the trial court "disregarded" the totality-of-the-circumstances-standard set forth in *Gates,* and it argues that "the affidavit stated facts indicating a fair probability that contraband or evidence would be located at Apartment 4." It urges this court to uphold the search warrant, primarily, upon a finding of probable cause. Thus, the State does not seek to "change" the trial court's judgment. App.R. 3(C)(2). Rather, its aim is to defend the judgment on a ground (probable cause) other than that relied upon by the trial court (good faith exception). Accordingly, the State was not required to file a notice of cross-appeal in order to preserve its ability to raise the argument.

10.

{¶ 22} Moreover, we agree with the State that, considering the totality of the circumstances, the affidavit in this case sets forth sufficient facts to establish a nexus between Williams's illegal activities and 3508 Hilltop, Apartment 4.

{¶ 23} Over the course of its six-month investigation, the police gathered clear and convincing evidence that Williams was engaged in drug trafficking. The evidence consisted of regular reports from a confidential informant who was deemed "very reliable," specifically in July of 2021 (Williams "sells Cocaine from 1013 Waverly"); August 16, 2021 (Williams "is still selling cocaine out of 1013 Waverly"); September of 2021 (Williams is "still selling cocaine out of the address of 1013 Waverly"); October of 2021 (Williams "was at 1013 Waverly selling cocaine"); and November of 2021 (Williams "had a large amount drugs on this person"). Separately, the confidential informant successfully arranged two drug-buys with Williams, one at Waverly in July of 2021 and another at a "predetermined location" in October of 2021. Through surveillance, Detective Paszczkowski independently confirmed that Williams comes and goes from the Waverly location (conducted on July 9 and November 30, 2021).

{¶ 24} Five months into the investigation, on December 1, 2021, police linked Williams to the apartment complex located at 3508 Hilltop, when Detective Paszczkowski observed Williams exit the complex and enter the red Chysler 300 where Williams was observed doing "multiple," albeit unidentified, hand to hand transactions. The next day, December 2, 2021, the police observed Williams "enter and exit" a particular apartment at that location, i.e. Apartment 4. And, one week later, while Detective Paszczkowski was conducting surveillance at 1013 Waverly, she observed a "pattern of activity consistent with the trafficking of narcotics,"

11.

specifically "multiple people and vehicles coming and going. . . and only staying for short periods of time." During that surveillance, police observed Williams "leaving 1013 Waverly carrying a bag" and proceeding "directly" to 3508 Hilltop and "entering the apartment building carrying the same bag." This activity caused Detective Paszczkowski, who had numerous years of experience, to believe that evidence of drug trafficking would likely be found at Apartment 4.

{¶ 25} Williams argues that there was "absolutely no nexus" between his illegal activities at "other locations" and "the Hilltop address" because, although police observed him carrying a bag into the Hilltop "building," they did not observe him enter the "apartment itself."

{¶ 26} But, by then, the police had already connected Williams to Apartment 4 (through its own observations and by conducting a trash pull outside that unit). Given that probable cause requires "'only the probability, and not a prima facie showing, of criminal activity,'" it was reasonable for police to conclude that a fair probability exists that when Williams entered the apartment building, that he continued to Apartment 4. *George* at 329, quoting *Gates*, 462 U.S. at 235.

{¶ 27} We further find that the close proximity in time between the surveillance on December 9, 2021 and service of the warrant later that day is relevant, especially given that Williams was observed bringing a bag from a known drug house, i.e. Waverly, where drug transactions were suspected, and then going "directly to" 3508 Hilltop, still carrying the bag. *Compare State v. Battles,* 2021-Ohio-3005, ¶ 27 (10th Dist.) (Citing cases for the proposition that "temporal proximity between a controlled drug transaction and arrival at a residence provides an issuing authority a substantial basis to conclude that a nexus exists between the

12.

place to be searched and the alleged criminal activity and, at the least, probable cause to believe [that] proceeds of a drug transaction would be located in the residence"). *See also, United States v. Ellison*, 632 F.3d 347, 349 (6th Cir. 2011) ("Commission of a drug transaction outside of a house and one participant's walking back into the house, as observed in this case, plainly demonstrated a sufficient nexus with the house.").

{¶ 28} This case is similar to *State v. Williams,* 2023-Ohio-4344 (6th Dist.), where the affidavit for a search warrant indicated that police had observed the defendant engage in a hand-to-hand transaction in front of address no. 1 and then return back inside and that on two other occasions, police had witnessed the defendant drive between address no. 1 and address no. 2 "during or after suspected drug transactions." Based upon that information, we found "a nexus of fair probability of locating contraband or evidence of a crime [at address no. 1] and by extension the [address no. 2]." *Id.* at ¶ 42.

{¶ 29} Likewise, we find that, given the corroboration of the information within the four corners of the warrant affidavit and the nexus between criminal activity and 3508 Hilltop, Apartment 4, the magistrate issuing the warrant had a substantial basis under the totality of the circumstances to find that probable cause existed for the search of that location. Accordingly, in failing to find that probable cause existed to search the premises, the trial court engaged in a de novo review, substituted its judgment for that of the issuing municipal court judge and failed to give deference to the municipal judge's finding of probable cause. *Accord, Lang,* 2023-Ohio-2026, at ¶ 24 (1st Dist.). Therefore, we find that the trial court erred in its finding and that the

13.

warrant executed at 3508 Hilltop, Apartment 4 was supported by probable cause and thus constitutional.

**B. Good Faith**

{¶ 30} Under the good faith exception, the exclusionary rule should not be applied to bar the use of evidence obtained by police officers acting in objectively reasonable reliance on a search warrant issued by a detached and neutral magistrate but ultimately found to be unsupported by probable cause. *United States v. Leon*, 468 U.S. 897 (1984); *State v. Wilmoth*, 22 Ohio St.3d 251 (1986).

{¶ 31} In his first assignment of error, Williams argues that the trial court erred in finding that the good faith exception to the exclusionary rule was applicable in this case. He maintains that the exclusion of the evidence recovered at 3508 Hilltop, Apartment 4 is an appropriate sanction because no reasonably informed and trained officer could believe that probable cause arose from the facts averred in the search warrant affidavit. Because we have found that probable cause supported the issuance of the search warrant in this case, Williams's argument—that the search warrant did not fall into the good faith exception—is rendered moot, and we decline to address it. App.R. 12(A)(1)(c); *Williams* at ¶ 48. Accordingly, Williams's first assignment of error is found not well-taken.

### III. Williams's No Contest Plea

{¶ 32} In his second assignment of error, Williams argues that his guilty plea was unknowing and involuntary because the trial court did not inform him, before accepting the plea,

14.

of his constitutional right to require the State to prove his guilt beyond a reasonable doubt, in violation of Crim.R. 11(C)(2)(c).

{¶ 33} Under both the United States and Ohio Constitutions, a guilty plea must be made knowingly, intelligently, and voluntarily to be valid. *Boykin v. Alabama*, 395 U.S. 238, (1969); *State v. Engle*, 74 Ohio St.3d 525, 527 (1996). Crim.R. 11(C) provides that, before a trial court accepts a plea, the trial court must personally inform the defendant that by pleading guilty or no contest, he is waiving the constitutional and non-constitutional rights stated in that rule. When explaining the defendant's non-constitutional rights, the trial court must substantially comply with Crim.R. 11(C), which "means that under the totality of the circumstances the defendant subjectively understands the implications of his plea and the rights he is waiving." *State v. Nero*, 56 Ohio St.3d 106, 108 (1990). However, when explaining the defendant's constitutional rights, the trial court must strictly comply with Crim.R. 11(C) or the plea is invalid under the presumption that it was not knowingly and voluntarily entered. *State v. Clark*, 2008-Ohio-3748, ¶ 31. Thus,

> [A] trial court must strictly comply with Crim.R. 11(C)(2)(c) and orally advise a defendant before accepting a felony plea that the plea waives (1) the right to a jury trial, (2) the right to confront one's accusers, (3) the right to compulsory process to obtain witnesses, (4) *the right to require the [S]tate to prove guilt beyond a reasonable doubt,* and (5) the privilege against compulsory self-incrimination. When the trial court fails to strictly comply with this duty, the defendant's plea is invalid. (Emphasis added.)

*State v. Veney*, 2008-Ohio-5200, ¶ 31. More recently, the Ohio Supreme Court found that "a trial court's failure to notify a defendant of his constitutional rights listed in Crim.R. 11(C)(2)(c) amounts to plain error." *State v. Miller*, 2020-Ohio-1420, ¶ 13, citing *Veney* at ¶ 24.

15.

{¶ 34} At the plea hearing in this case, the trial court engaged in the following colloquy with Williams regarding his constitutional rights:

> THE COURT: Now you don't have to tender this plea of no contest. You have a right, a Constitutional right to have the question of your guilt or innocence decided by way of a trial. If you wanted to go to trial it could either be a trial to me alone as the trier of fact or you could have a Jury of 12 to fulfill that role. Following this plea then there will be no trial, not to me and not to a Jury. You understand that as well, Mr. Williams?
> MR. WILLIAMS: Yes.
> THE COURT: Had you gone to trial, however, your Attorney would have the right to confront all witnesses who might testify, ask questions of the witnesses. You also have the right to what we call compulsory process. That allows you to have subpoenas issued for persons or things to be brought before the Court. Do you understand those two rights?
> MR. WILLIAMS: Yes, Your Honor.
> THE COURT: Additionally, if you had gone to trial you do not have to testify against yourself and if you chose not to testify your silence could not be used against you in an effort to infer or imply your guilt from that silence. Do you understand those rights as well?
> MR. WILLIAMS: Yes, Your Honor.
> THE COURT: Now I'm going to discuss the sentences.. .

{¶ 35} Thus, the trial court explained four of the five constitutional rights set forth in Crim.R. 11(C)(2)(c). Williams argues that, because the transcript is "devoid of any mention" of his right to require the State to prove his guilt beyond a reasonable doubt, his plea must be vacated. The State concedes that "the transcript does not include a discussion of a burden of proof or any requirement that the prosecution prove the element of the case," but it stops short of acknowledging that the omission amounts to reversible error. Instead, it refers to a portion of Williams's written plea agreement, wherein he indicated his "understand[ing]" that by entering a plea, he was "waiv[ing] [his] right to have the prosecutor prove [his] guilt beyond a reasonable doubt on every element of the charge."

16.

**{¶ 36}** As a general rule, "[a]n alleged ambiguity during a Crim.R. 11 oral plea colloquy may be clarified by reference to other portions of the record, including the written plea." *State v. Barker*, 2011-Ohio-4130, paragraph two of the syllabus. In *Barker*, the Supreme Court of Ohio held that an appellate court may consider additional record evidence to reconcile an alleged ambiguity that results "when a trial court *inartfully* explains the defendant's constitutional rights during the Crim.R. 11 plea colloquy." (Emphasis in the original.) *State v. Clinton,* 2018-Ohio-3509, ¶ 14 (6th Dist.), citing *Barker* at ¶ 25 (any ambiguity that resulted from the trial court's explanation of the constitutional right of compulsory process of witnesses, described by the trial court as the "right to call witnesses to speak on your behalf," could be reconciled by reference to the signed plea form). But, where the trial court has completely "failed to orally inform" the defendant of his constitutional rights, the court may not "simply rely on other sources to convey these rights." *Veney* at ¶ 29, 30 ("Although the trial court may vary slightly from the literal wording of the rule in the colloquy, the court cannot simply rely on other sources to convey those rights to the defendant.").

**{¶ 37}** Here, because "trial court *completely* fail[ed] to inform" Williams of a constitutional right under Crim.R. 11(C)(2)(c), his no contest plea is "invalid under the presumption that it was not knowingly and voluntarily entered." (Emphasis in original.) *Clinton* at ¶ 14, citing *Clark* at ¶ 31; *Veney* at ¶ 30 ("The trial court completely failed to orally inform Clinton of his constitutional right to require the state to prove its case beyond a reasonable doubt, and the state may not "simply rely" on other portions of the record to remedy that failure.").

17.

**{¶ 38}** Therefore, Williams's no-contest plea is invalid, and the trial court committed plain error in accepting it.  Accordingly, Williams's second assignment of error is well-taken.

### IV. Conclusion

**{¶ 39}** As set forth above, we find Williams's first assignment of error not well-taken. However, having determined that William's no contest plea is invalid, because the trial court did not strictly comply with Crim.R. 11(C)(2)(c) before accepting it, we vacate Williams's plea, reverse his conviction and remand this matter to the trial court for further proceedings. The state is ordered to pay the costs of this appeal under App.R. 24.  It is so ordered.

Judgment reversed and remanded.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4.

Thomas J. Osowik, J.
_____
JUDGE

Christine E. Mayle, J.
_____
JUDGE

Myron C. Duhart, J.
CONCUR.
_____
JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions.  Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.