[Cite as *State v. Blackman*, 2023-Ohio-3535.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

State of Ohio                                    Court of Appeals No.  L-22-1206

        Appellee                          Trial Court No.  CR0202002033

v.

Ramon Blackman                          **DECISION AND JUDGMENT**

        Appellant                          Decided:  September 29, 2023

* * * * *

Julia R. Bates, Lucas County Prosecuting Attorney, and
Evy M. Jarrett, Assistant Prosecuting Attorney, for appellee.

Neil S. McElroy, for appellant.

* * * * *

**DUHART, J.**

{¶ 1} This case is before the court on appeal by appellant, Ramon Blackman, from

the  judgment of the Lucas County Court of Common Pleas, journalized on June 5, 2023.[1]

For the reasons that follow, we affirm.

---

[1] Appellant initially appealed a judgment entry journalized August 11, 2022.  However,
we remanded this appeal back to the trial court to allow the trial court to issue a final
appealable order.  A new judgment entry was journalized on June 5, 2023.  It is this
judgment we consider now.

**Assignment of Error**

The trial court erred in accepting [appellant]'s plea, as it was not made knowingly, intelligently and voluntarily.

**Background**

{¶ 2} On August 28, 2020, appellant was indicted on one charge of murder in violation of R.C. 2903.02(A) and 2929.02 (Count 1), murder in violation of R.C. 2903.02(B) and 2929.02 (Count 2), and felonious assault in violation of R.C. 2903.11(A)(2) and (D), a felony of the second degree. All three counts included firearm specifications pursuant to R.C. 2941.145(A), (B), (C), and (F).

{¶ 3} On July 12, 2022, a jury trial began. After a break for lunch, the parties informed the judge that they had reached a resolution in the case.

*First Plea Hearing*

{¶ 4} On July 13, 2022, proceedings commenced for the taking of the plea. According to the prosecutor, pursuant to the plea agreement, appellant was to be arraigned on a bill of information to the additional charges of improperly discharging a firearm at or into a habitation, and tampering with evidence. Appellant then would tender a plea of guilty to Count 2, the lesser included offense of involuntary manslaughter with a firearm specification, and also plea to the two new charges. There was to be an agreed upon sentence of an indefinite prison term of a minimum of 21 years and a maximum of 27 years, plus an additional 3 years for the firearm specification. After appellant waived indictment on the two new charges and was arraigned and pleaded guilty, the court went

2.

through the plea colloquy. When asked whether he understood he would not be eligible for judicial release, appellant answered "No." The court gave appellant time to discuss the matter with his attorney. After conversing with his attorney, appellant was asked if he understood the plea deal, to which he responded that he did, and when he was asked if he understood he was not eligible for judicial release, he answered in the affirmative. His attorney then attempted to explain what had initially led to appellant's confusion regarding his eligibility for judicial release. Afterward, appellant stated that "That's not what was told to me but it's all right now. I understand now." He again indicated that he understood he was not eligible for judicial release and that he wanted to go ahead with the plea deal. Later, appellant's attorney stated that appellant wanted a transcript of the proceedings "for purposes of appeal." The following conversation then took place.

THE COURT: You know, there's too many red flags on this right now. Mr. Blackman just indicated he wants to appeal this. So if he wants to appeal this that doesn't sound like he is voluntarily, knowingly and intelligently entering into this plea. So I don't think I should take this plea today.

* * *

THE COURT: I think we should continue this a couple of days. You can talk to [your attorney] and if you really want to go forward with this plea, that is fine. But if you're telling me you want to appeal, that

3.

doesn't sound like you are knowingly, intelligently and voluntarily entering into this plea, Mr. Blackman.

* * *

MR. BLACKMAN: I only want to appeal one charge, shooting into a habitation.

THE COURT: The one that we just did the Bill of Information on.

MR. BLACKMAN: Yes.

THE COURT: So if you want to appeal what you just agreed to being charged with, I don't think we've got a plea agreement here today * * *.

{¶ 5} The prosecutor explained that the reason the shooting into a habitation charge was added was "to get to the time frame that [they] needed ***." Appellant's attorney agreed. Appellant was again asked if he wanted to add anything and he stated that he understood, but he still wanted to appeal. Based upon this, the court found that the plea was not made voluntarily, knowingly, and intelligently and continued the case until the following week.

*Second Plea Hearing*

{¶ 6} On July 22, 2022, appellant appeared before the court and asked for "a couple more days" to consider the plea deal. The court agreed.

*Third Plea Hearing*

**{¶ 7}** On July 27, 2022, the prosecutor again described the plea as set forth above, the only difference being appellant would plead guilty pursuant to *North Carolina v. Alford*, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970), and appellant again waived his right to be indicted on the additional charges of improperly discharging a firearm at or into a habitation and tampering with evidence.[2]

**{¶ 8}** The court then engaged appellant in a plea colloquy, during which the court confirmed, inter alia, that appellant understood the plea agreement, the possible penalties, and the rights he was waiving by entering the plea. Appellant did not mention any of the issues raised in the first plea hearing, and, when notified that he would not be eligible for judicial release, he stated that he understood.

**{¶ 9}** Appellant then pleaded guilty pursuant to *North Carolina v. Alford* to the amended Count 2, and the new Count 4 (improperly discharging a firearm at or into a habitation) and Count 5 (tampering with evidence).

**{¶ 10}** The court found that appellant was informed of all his constitutional rights and understood the nature of the charge, the effect of the plea, as well as the penalties that could be imposed, and had made a knowing, intelligent and voluntary decision to plead guilty. The court then accepted appellant's pleas and found appellant guilty. The case was continued for sentencing.

---

[2] Pursuant to the written plea agreement, the state would nolle Counts 1 and 3 at sentencing.

5.

*Sentencing*

{¶ 11} On August 10, 2022, appellant appeared for sentencing. The judge first notified the parties that there was a mistake in the plea agreement in that, rather than an agreed-upon sentence of 21 to 27 years, it should read 21 years to 26.5 years. That was explained to appellant, and he said he understood.

{¶ 12} The court then imposed the agreed-upon sentence. Appellant was sentenced to a minimum sentence of 11 years and a maximum sentence of 16.5 years as to Count 2, 8 years as to Count 4, and 24 months as to Count 5, all to be served consecutively. He was also sentenced to an additional 3-year mandatory and consecutive sentence for the firearm specification, and he was ordered to pay restitution. Counts 1 and 3, and the attached firearm specifications were dismissed.

{¶ 13} Appellant appealed.

**Analysis**

{¶ 14} "A guilty plea must be made knowingly, intelligently, and voluntarily to be valid under both the United States and Ohio Constitutions. To ensure that a defendant enters a plea knowingly, intelligently, and voluntarily, the trial court is required to engage a defendant in a plea colloquy pursuant to Crim.R. 11." (Citations omitted.) *State v. Whitman*, 2021-Ohio-4510, 182 N.E.3d 506, ¶ 14 (6th Dist.). This rule applies equally to *Alford* pleas. *See State v. Hopings*, 6th Dist. Lucas No. L-18-1038, 2019-Ohio-1486, ¶ 7. As part of the plea colloquy required by Crim.R. 11, the trial court must "personally

6.

inform the defendant of his rights and the consequences of his plea and determine if the plea is understandingly and voluntarily made." *State v. Dangler*, 162 Ohio St.3d 1, 2020-Ohio-2765, 164 N.E.3d 286, ¶ 11, quoting *State v. Stone*, 43 Ohio St.2d 163, 168, 331 N.E.2d 411 (1975).

{¶ 15} Traditionally, "a defendant is not entitled to have his plea vacated unless he demonstrates he was prejudiced by a failure of the trial court to comply with the provisions of Crim.R. 11(C)." *Id.* at ¶ 16, citing *State v. Nero*, 56 Ohio St.3d 106, 108, 564 N.E.2d 474 (1990). Therefore, we conduct a three-part inquiry when considering whether a defendant is entitled to have his plea vacated – "(1) has the trial court complied with the relevant provision of the rule? (2) if the court has not complied fully with the rule, is the purported failure of a type that excuses a defendant from the burden of demonstrating prejudice? and (3) if a showing of prejudice is required, has the defendant met that burden?" *Id.* at ¶ 17.

{¶ 16} When determining whether a plea was knowingly, intelligently, and voluntarily made, we examine "the totality of the circumstances through a de novo review of the record to ensure that the trial court complied with constitutional and procedural safeguards." *State v. Gumm*, 6th Dist. Erie No. E-21-044, 2022-Ohio-2287, ¶ 16 quoting *State v. Parks*, 6th Dist. Lucas No. L-18-1138, 2019-Ohio-2366, ¶ 10. Our focus is on "whether the dialogue between the court and the defendant demonstrates that the defendant understood the consequences of his plea." *Dangler* at ¶ 12.

7.

{¶ 17} Appellant contends that the fact that the "plea hearing was rescheduled for three different dates so defense counsel could explain the proposed terms of the plea [to appellant], which remained the same from the time it was offered" is evidence that the plea was not made knowingly, intelligently, and voluntarily. He also maintains that his indication, in the first plea hearing, that he intended to appeal one of the charges is evidence of a lack of voluntariness.

{¶ 18} We find that appellant's plea was made knowingly, intelligently, and voluntarily. Although, in the first plea hearing, appellant asserted that he intended to appeal, the trial court did not take the plea at that time. Rather, the trial court gave appellant ample opportunity to understand the plea and make an informed decision. Moreover, after reviewing the dialogue between the court and appellant at the third plea hearing, we find that the trial court fully complied with Crim.R. 11, and that defendant understood the consequences of his plea. When asked why he was entering the *Alford* plea, he responded that he didn't "want to get found guilty and get more time than what [he] could get" by entering the plea. The court then fully explained the charges to which appellant was pleading and the maximum penalties for each, as well as what rights he was waiving by pleading. When asked whether he understood each of these, appellant consistently responded affirmatively. He also was informed, inter alia, that he was not eligible for judicial release, and he stated that he understood this.

{¶ 19} Accordingly, we find appellant's assignment of error not well-taken.

8.

**Conclusion**

**{¶ 20}** The judgment of the Lucas County Court of Common Pleas is affirmed.

Pursuant to App.R. 24, appellant is hereby ordered to pay the costs incurred on appeal.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Gene A. Zmuda, J.                                      _____
                                                                      JUDGE

Myron C. Duhart, P.J.           

                                                _____

Charles E. Sulek, J.                                        JUDGE
CONCUR.

                                                _____
                                                                      JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.