[Cite as *State v. Lucas*, 2025-Ohio-5303.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
OTTAWA COUNTY

State of Ohio                                   Court of Appeals No.  {62}OT-25-002

      Appellee                              Trial Court No.  24 CR 173

v.

Dustin Lucas                                    **DECISION AND JUDGMENT**

      Appellant                             Decided: November 25, 2025

* * * * *

James VanEerten, Ottawa County Prosecutor, and
Barbara Gallé, Assistant Prosecuting Attorney, for appellee.

Christopher Bazeley, for appellant.

* * * * *

**DUHART, J.**

{¶ 1}  Appellant, Dustin Lucas, appeals from a judgment entered by the Ottawa County Court of Common Pleas following his guilty plea to 35 counts of violating a protection order. For the reasons that follow, the trial court's judgment is affirmed.

**Statement of the Case and of the Facts**

{¶ 2}   Between July 29, 2024 and August 6, 2024, Lucas violated the terms of a protection order issued against him by making 35 calls to individuals protected under the order. On August 7, 2024, Lucas was indicted on 35 counts of violating a protection order, all felonies of the fifth degree pursuant to R.C. 2919.27(A)(1) and (B)(3)(a).

{¶ 3}   The case proceeded to a jury trial on November 12, 2024. On the following day, during a recess in the trial, Lucas decided to plead guilty to the indictment. A plea colloquy directly ensued.

{¶ 4}   At the outset of the plea colloquy, the trial court asked Lucas whether he had enough time to talk to his attorney and whether his attorney had answered all of his questions. Lucas answered in the affirmative. Next, the trial court asked Lucas whether he had carefully read the four-page written plea agreement. Again, Lucas answered in the affirmative. On the last page of the written plea agreement, which bears Lucas's signature, is the statement, "I know the Judge may either sentence me today or refer my case for a pre-sentence report."

{¶ 5}   The trial court discussed with Lucas the nature of the charges and the maximum penalty involved. In addition, the trial court advised Lucas of his right to a trial and that by pleading guilty Lucas would be giving up that right and other constitutional rights attendant to a trial. The trial court asked Lucas, "With all that in mind, are you certain that you want to enter a guilty plea?" Lucas answered that he did.

2.

{¶ 6}   The trial court asked Lucas whether he acknowledged the existence of a temporary protection order that was in place against him and prohibited him from making phone calls to certain protected parties. Lucas answered that he did. The trial court also asked Lucas whether he had made phone calls to the protected parties. Again, Lucas answered affirmatively. The State added to the facts acknowledged by Lucas, specifying the dates on which the phone calls were made and asserting that Lucas had a prior conviction from 2015 for violation of a protection order. Lucas confirmed that the State's facts were accurate and that "should [the] matter have continued through the conclusion of the jury trial…the evidence would have shown beyond a reasonable doubt that Lucas, on or about [the] date range of 7/29 through 8/6/2024, while in Ottawa County, after having been served with a copy of the Protection Order, did recklessly violate that Order. And did, in fact, have a prior conviction for Violation of a Protection Order."

{¶ 7}   The trial court, finding that Lucas had made a knowing, intelligent, voluntary decision to enter a plea of guilty, proceeded immediately to sentencing, overruling Lucas's motion for a brief continuance to allow his family to return from the lunch break. Lucas asked, "Oh, I'm being sentenced today?" The trial court asked if there was an objection, and the State objected and asked to proceed immediately to sentencing. Lucas asked, "No PSI? Why?" The trial court responded, "Well, for security reasons, it may be better that we do this without a lot of spectators."

{¶ 8}   The trial court imposed six-month terms of incarceration on each of the 35 counts and ordered that they be served consecutively. Thus, Lucas was sentenced to an

3.

aggregate term of 17.5 years in prison. In addition, the trial court imposed two sentences of 30 days in jail, each for an instance of direct contempt of court, to run concurrently with Lucas's prison sentence.

{¶ 9} On December 17, 2024, Lucas filed a motion to withdraw his plea pursuant to Crim.R. 32.1 and a pro se notice of appeal. The State filed a response to Lucas's motion to withdraw his plea. And on January 3, 2025, the trial court denied the motion. Also on January 3, 2025, this court dismissed Lucas's appeal as untimely filed. On February 3, 2025, Lucas filed a motion for leave to file a delayed appeal via appointed counsel, and this motion was granted. This appeal followed.

## Assignments of Error

{¶ 10} On appeal, Lucas asserts the following assignments of error:

I. Lucas' plea was not knowingly, intelligently, and voluntarily made because the trial court failed to orally advise him of his rights under Crim.R. 11(C)(2)(b).

II. The trial court erred when it overruled Lucas' motion to withdraw his guilty plea.

## Law and Analysis

**First Assignment of Error**

{¶ 11} Lucas argues in his first assignment of error that his plea was not knowingly, intelligently, and voluntarily made because the trial court failed to orally advise him of his rights under Crim.R. 11(C)(2)(b).

4.

{¶ 12} "Due process requires that a defendant's plea be made knowingly, intelligently, and voluntarily; otherwise, the defendant's plea is invalid." *State v. Bishop*, 2018-Ohio-5132, ¶ 10 (lead opinion), citing *State v. Clark*, 2008-Ohio-3748, ¶ 25. "Crim.R. 11(C)(2) governs the process that a trial court must follow before accepting a plea of guilty to a felony charge." *State v. Brinkman*, 2021-Ohio-2473, ¶ 11, citing *Bishop* at ¶ 11. Relevant here, Crim.R. 11(C)(2)(b), requires the court to advise the defendant of, and determine that the defendant understands: (1) the effect of the guilty plea; and (2) the fact that the court, upon acceptance of the plea, may proceed with judgment and sentence. To satisfy the effect-of-plea requirement of Crim.R. (C)(2)(b), the trial court must inform the defendant that "[t]he plea of guilty is a complete admission of the defendant's guilt." Crim.R. 11(B)(1).

{¶ 13} When an appellant seeks to vacate his plea on appeal because the plea was not entered in a knowing, intelligent, and voluntary matter due to the trial court's failure to comply with Crim.R. 11, ""the questions to be answered are simply: (1) has the trial court complied with the relevant provision of the rule? (2) if the court has not complied fully with the rule, is the purported failure of a type that excuses [an appellant] from the burden of demonstrating prejudice? And (3) if a showing of prejudice is required, has the [appellant] met that burden?"" *State v. Johnson*, 2023-Ohio-2008, ¶ 14 (6th Dist.), quoting *State v. Morgan*, 2021-Ohio-3996, ¶ 15 (6th Dist.), quoting *State v. Dangler*, 2020-Ohio-2765, ¶ 17. "Unless the trial court fails to explain a constitutional right in Crim.R. (C)(2)(c) or completely fails to comply with a portion of Crim.R. 11(C) – e.g.,

5.

by failing to mention mandatory postrelease control, *State v. Sarkozy*, 2008-Ohio-509, ¶ 22 – the appellant is required to show prejudice to have his plea vacated." *Id.*, citing *State v. Dangler*, 2020-Ohio-2765, ¶ 13-16. "The test for prejudice is '"whether the plea would have otherwise been made."'" *Id.* at ¶ 17, quoting *Dangler* at ¶ 16, quoting *State v. Nero*, 56 Ohio St.3d 106, 108 (1990).

{¶ 14} In challenging the validity of his plea, Lucas argues that the trial court completely failed to comply with Crim.R. 11(C)(2)(b), and so he was not required to make a showing of prejudice. Turning to the record, we find it is true that the trial court did not use the exact phrasing of Crim.R. 11(B)(1) and inform Lucas that his guilty plea was a "complete admission of guilt." But as the Ohio Supreme Court has held, the focus in reviewing pleas has not been on whether the trial judge has '[incanted] the precise verbiage' of the rule ... but on whether the dialogue between the court and the defendant demonstrates that the defendant understood the consequences of his plea. (Citations omitted.) (Internally quoted bracketed text in original.) *Dangler* at ¶ 12. Here, Lucas clearly admitted his guilt in response to the trial court's questioning. The Ohio Supreme Court has held that "a defendant who has entered a guilty plea without asserting actual innocence is presumed to understand that he has completely admitted his guilt." *State v. Griggs*, 2004-Ohio-4415, ¶ 19. *Accord State v. Fontanez*, 2024-Ohio-1590, ¶ 18-19 (8th Dist.); *State v. Blair*, 2022-Ohio-2572, ¶ 12-15 (5th Dist.); *State v. Krieger*, 2020-Ohio-6964, ¶ 19 (7th Dist.).

6.

{¶ 15} The dialogue between the court and Lucas indicates that the trial court sufficiently conveyed to Lucas that a guilty plea was a complete admission of guilt and, further, could determine that Lucas understood this to be the case. We note that there is nothing in the record, nor any allegation by Lucas, to suggest that Lucas's plea was less than knowing, intelligent, and voluntary based on the lack of an explicit discussion of the "complete admission of guilt" language.

{¶ 16} Next we consider the trial court's failure to specifically inform Lucas about its ability to proceed with sentencing. According to Lucas, this failure alone constitutes a "complete failure" to comply with Crim.R. 11(C)(2)(b).

{¶ 17} In *State v. Barker*, 2011-Ohio-4130, the Supreme Court of Ohio held that "an alleged ambiguity during a Crim.R. 11 oral plea colloquy may be clarified by reference to other portions of the record, including the written plea, in determining whether the defendant was fully informed of the right in question." *Id.* at ¶ 25. Applying this principle to the instant case, we find that while ambiguity may indeed have resulted during the Crim.R. 11 oral plea colloquy -- where the trial court adequately explained the effect of a guilty plea and fully discussed the potential sentences involved, yet failed to explain that the trial court could, upon acceptance of the plea, immediately proceed with judgment and sentence -- the terms of Lucas's plea agreement served to clarify that ambiguity. Here, the terms of the plea agreement expressly informed Lucas that he could be sentenced on the day the plea agreement was reached or following a pre-sentence report, thereby clarifying any ambiguity as to when the otherwise-fully-discussed

7.

potential sentences might be imposed. Lucas himself acknowledged that he had read over the plea agreement carefully before he signed it, that the plea agreement contained the advisement that the trial court could immediately proceed to sentencing, and that to the extent he had questions, he had an opportunity to ask his attorney about those questions. *See State v. Phipps*, 2021-Ohio-258, ¶ 13 (3d Dist.) (trial court did not completely fail to comply with Crim.R. 11(C)(2)(b) where a statement in the signed plea agreement indicating that the judge could immediately sentence the appellant clarified an alleged ambiguity that occurred during Crim.R. 11 oral plea colloquy where the trial court failed to explain that it could, upon acceptance of the plea, proceed with judgment and sentence); *State v. Miller*, 2017-Ohio-478, ¶ 16 (2d Dist.) (finding substantial compliance with Crim.R. 11(C)(2)(b) where plea form contained the specific Crim.R. 11(C)(2)(b) advisement that was omitted during the plea colloquy (i.e., that the trial court could proceed with judgment and sentence upon accepting the guilty plea) and where the appellant indicated that he had read and understood the plea form prior to signing it); *State v. Sheppeard*, 2023-Ohio-3278, ¶ 15 (2d Dist.) ("We have found substantial compliance with Crim.R.11(C)(2)(b) when the plea form includes the required advisements and the defendant indicates at the plea hearing that he or she has read and understood the plea form.")  Therefore, under the circumstances of this case, where the plea form contained the specific Crim.R. 11(C)(2)(b) advisement that was omitted during the Crim.R. 11 oral plea colloquy, thereby clarifying an ambiguity that occurred during the colloquy, and where Lucas read that specific advisement and presumably understood

8.

that the trial court could immediately proceed with judgment and sentence upon accepting his guilty plea, we find that the trial court did not completely fail to comply with Crim.R. 11(C)(2)(b).

{¶ 18} Because the trial court did not completely fail to comply with the ability-to-proceed-with-sentencing requirement of Crim.R. 11(C)(2)(b), Lucas is not entitled to have his plea vacated unless he demonstrates prejudice. *See Dangler* at ¶ 13-16. Lucas claims that "[b]ecause the [ability-to-proceed-with-sentencing] advisement contains two options," he "reasonably believed the issue would be discussed at the conclusion of the plea hearing." This statement supports the notion that Lucas was aware of the options, including that the trial court could proceed to sentencing. It also suggests that Lucas was expecting the conversation about the timing of sentencing to occur at the end of the plea hearing, after he had already pleaded guilty. Thus, the timing of the sentencing was not a determinative factor in whether he pleaded guilty. Lucas also claims that the trial court's decision to proceed to sentencing "took him by surprise and denied him the opportunity to see his family before" serving his sentence. Lucas may have been surprised that the trial court chose the option of proceeding directly to sentencing, but Lucas has not shown, or even alleged, that he would not have pleaded guilty if he had known that the trial court would be proceeding immediately to sentencing. Because Lucas has failed to establish that his plea was less than knowing, intelligent, and voluntary based on the trial court's failure to explicitly tell him that it could proceed to sentencing immediately upon his

9.

entry of a guilty plea, he fails to establish prejudice, and so we find his first assignment of error not well-taken.

**Second Assignment of Error**

{¶ 19} Lucas argues in his second assignment of error that the trial court erred when it denied his motion to withdraw his guilty plea. "An appellate court reviews a trial court's decision on a motion to withdraw a plea under an abuse-of-discretion standard." *State v. Francis*, 2004-Ohio-6894, ¶ 32 (citations omitted). "Abuse of discretion means that the trial court's decision was unreasonable, arbitrary, or unconscionable." *State v. Freiss*, 2023-Ohio-3409, ¶ 98 (6th Dist.), citing *State ex rel. Askew v. Goldhart*, 75 Ohio St.3d 608, 610 (1996).

{¶ 20} Crim.R. 32.1 provides that "[a] motion to withdraw a plea of guilty or no contest may be made only before sentence is imposed; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his or her plea." "A manifest injustice is defined as a 'clear or openly unjust act.' Manifest injustice is an extremely high standard, and a defendant may only withdraw his guilty plea in extraordinary cases." *State v. Johnson*, 2012-Ohio-4866, ¶ 9 (6th Dist.), quoting *State v. Harmon*, 2011-Ohio-5035, ¶ 12 (6th Dist.) (citations omitted), "A guilty plea that was not entered knowingly, intelligently, or voluntarily, creates a manifest injustice that would entitle a defendant to withdraw a plea." *State v. Williams*, 2024-Ohio-6123, ¶ 5 (10th Dist.) (citation omitted).

10.

{¶ 21} Lucas claims that his plea was not knowingly, intelligently, and voluntarily given because the trial court failed to advise him of his rights under Crim.R. 11(C)(2)(b) and, therefore, there was a manifest injustice entitling him to withdraw his guilty plea. As discussed above, however, Lucas's plea was made knowingly, intelligently, and voluntarily. Thus, there was no manifest injustice, and the trial court did not abuse its discretion when it denied Lucas's motion to withdraw his plea. Lucas's second assignment of error is found not well-taken.

## Conclusion

{¶ 22} The judgment of the Ottawa County Court of Common Pleas is affirmed. Appellant is ordered to pay the costs of appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

| | |
|---|---|
| Thomas J. Osowik, J. | |
| | JUDGE |
| Christine E. Mayle, J. | |
| | JUDGE |
| Myron C. Duhart, J. | |
| CONCUR. | JUDGE |

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at:
http://www.supremecourt.ohio.gov/ROD/docs/.

11.