[Cite as *State v. Wang*, 2026-Ohio-861.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
WOOD COUNTY

State of Ohio                                    Court of Appeals No.WD-25-014

        Appellee

                                     Trial Court No. 2023CR0458

v.

Xiaosong Wang                                **DECISION AND JUDGMENT**

        Appellant                          Decided: March 13, 2026

* * * * *

Paul A. Dobson, Wood County Prosecutor, and
Kristofer A. Kristofferson, Assistant Prosecutor, for appellee.

Jeffrey P. Nunnari, for appellant.

* * * * *

**DUHART, J.**

{¶ 1} This case is before the court on appeal from the December 19, 2024 judgment of the Wood County Common Pleas Court. For the reasons that follow, we affirm in part and reverse in part.

# I. Assignments of Error

1. APPELLANT'S GUILTY PLEAS WERE NOT KNOWINGLY, INTELLIGENTLY AND VOLUNTARILY ENTERED.

2. APPELLANT'S SENTENCES ARE CONTRARY TO LAW.

# II. Background

{¶ 2} Appellant, Xiaosong Wang, was indicted on the following twelve counts: Counts 1 and 2 - aggravated murder, an unspecified felony, in violation of R.C. 2903.01(A) and R.C. 2929.02(A); Counts 3 and 4 - murder, an unclassified felony, in violation of R.C. 2903.02(B) and (D) and R.C. 2929.02(B); Counts 5, 6, and 7 - attempted murder, a first-degree felony, in violation of R.C. 2923.02, R.C. 2903.02(A) and (D) and R.C. 2929.02(B); Counts 8, 9 and 10 - felonious assault, a second-degree felony, in violation of R.C. 2903.11(A)(2) and (D)(1)(a); and, Counts 11 and 12 - possessing criminal tools, a fifth-degree felony, in violation of R.C. 2923.24(A) and (C). Counts 1 - 10 each also included a three-year firearm specification pursuant to R.C. 2941.145(A) and two specifications for forfeiture of a weapon, under R.C. 2941.1417(A). Wang pled not guilty.

{¶ 3} On August 26, 2024, a change of plea hearing was held, and Wang withdrew his not guilty pleas and entered a plea of guilty to each count and specification in the indictment. As part of the plea agreement, the State agreed to merge certain offenses and to not seek a life-without-parole sentence.

{¶ 4} On October 7, 2024, Wang's attorneys were given leave to withdraw and a new attorney was appointed to represent him.

2.

{¶ 5} Wang filed a motion to withdraw his plea. A hearing was held, and the motion was denied.

{¶ 6} Wang was sentenced on December 11, 2024. Pursuant to the plea agreement, Count 1 was merged with Count 3, Count 2 was merged with Count 4, and Counts 5 - 10 were merged. The State elected to proceed on Count 1, 2, and 5. Wang was then sentenced to life with the possibility of parole after 20 years for Count 1, life with the possibility of parole after 20 years for Count 2, a mandatory minimum term of 10 years and an indefinite maximum term of 15 years on Count 5, and 12 months each for Counts 11 and 12. Additionally, there were three-year firearm specifications attached to Counts 1, 2 and 5. Counts 1 and 2 were ordered to run consecutively to each other and consecutively to the associated gun specifications.[1] In the judgment entry, Counts 5, 11, and 12 and the gun specification attached to Count 5 were ordered to run consecutively to each other, but concurrent to Counts 1 and 2 and their associated gun specifications. In total, Wang was sentenced to 46 years to life.

{¶ 7} Wang appealed.

---

[1] There appears to be some inconsistency in the trial court's sentence as stated at the sentencing hearing as opposed to the judgment entry relating to whether the gun specification attached to Count 5 runs consecutively or concurrently to Counts 5, 11 and 12. This issue has not been raised by either party and therefore is rendered moot by our decision. Moreover, the inconsistency does not affect the length of Wang's sentence.

3.

### III. First Assignment of Error

### A. Arguments

{¶ 8} Wang contends that his plea was not made knowingly, intelligently and voluntarily. He points to the fact that his native language is Mandarin and alleges that the plea form and the plea colloquy contained errors and misstatements and do not comply with Crim.R. 11.

### B. Law

{¶ 9} A defendant's decision to enter a guilty plea must be knowing, intelligent and voluntary. *State v. Dangler*, 2020-Ohio-2765, ¶ 10. Crim.R. 11(C) sets forth the procedures trial courts must follow when accepting pleas and "'ensures an adequate record on review by requiring the trial court to personally inform the defendant of his rights and the consequences of his plea and determine if the plea is understandingly and voluntarily made.'" *Id*. at ¶ 11, citing *State v. Stone*, 43 Ohio St.2d 163, 168 (1975). Specifically, a trial court must "'must make the determinations and give the warnings required by Crim.R. 11(C)(2)(a) and (b)'" and "'notify the defendant of his or her constitutional rights enumerated in Crim.R. 11(C)(2)(c).'" *State v. Gowdy*, 2025-Ohio-5575, ¶ 23, quoting *State v. Veney*, 2008-Ohio-5200, ¶ 13. Traditionally, "a defendant is not entitled to have his plea vacated unless he demonstrates he was prejudiced by a failure of the trial court to comply with the provisions of Crim.R. 11(C)." *State v. Blackman*, 2023-Ohio-3535, ¶ 15 (6th Dist.), quoting *Dangler* at ¶ 16. "When a trial court complies with the requirements set out in Crim.R. 11, misstatements of law or premature pretrial rulings on ancillary issues, even if erroneous, do not invalidate an otherwise valid plea." *Gowdy* at ¶ 2.

{¶ 10} When an appellant seeks to vacate his plea on the basis that the plea was not entered in a knowing, intelligent, and voluntary manner due to the trial court's failure to comply

4.

with Crim.R. 11, the questions to consider are: "(1) has the trial court complied with the relevant provision of the rule? (2) if the court has not complied fully with the rule, is the purported failure of a type that excuses a defendant from the burden of demonstrating prejudice? and (3) if a showing of prejudice is required, has the defendant met that burden?"[2] *Dangler* at ¶ 17. Generally, an appellant must show prejudice to have his plea vacated unless the court fails to explain a constitutional right in Crim.R. 11(C)(2)(c) or completely fails to comply with any portion of Crim.R. 11(C). *State v. Lucas*, 2025-Ohio-5303, ¶ 13 (6th Dist.), citing *Dangler* at ¶ 13-16. "The test for prejudice is ""'whether the plea would have otherwise been made.'""" *Id.*

{¶ 11} We note that Wang's arguments in this assignment of error generally pertain to failures under Crim.R.11(C)(2), and he claims that both the written plea form and the plea colloquy did not comply with Crim.R. 11(C)(2). However, Crim.R. 11(C)(2) requires that the court address the defendant personally, and when considering whether the trial court complied with Crim.R. 11(C), our focus is on the dialogue between the court and the defendant to determine whether the defendant understood the consequences of his plea. *Dangler* at ¶ 12. Nevertheless, we may consider the plea form to clarify any alleged ambiguity during the Crim.R. 11 oral plea colloquy. *State v. Williams*, 2025-Ohio-2331, ¶ 36 (6th Dist.), quoting *State v. Barker*, 2011-Ohio-4130, paragraph two of the syllabus.

---

[2] Both parties base their arguments on a standard which considers whether the trial court strictly complied with the constitutional requirements of Crim.R. 11 and substantially complied with the nonconstitutional requirements of Crim.R. 11. However, more recently in *Dangler*, the Ohio Supreme Court set forth this test, which we have used to analyze the Wang's assigned errors.

5.

## C. Analysis

### 1. English was not Wang's First Language

{¶ 12} We first address general comments throughout Wang's brief relating to the fact that his native language is Mandarin, and that this may have contributed to his plea not being made knowingly, intelligently and voluntarily. The record shows that Wang had an interpreter during the events relevant to this appeal and there is no evidence that there were any issues with the interpreter. When Wang was asked at the plea hearing if he felt he understood the plea agreement, he said that he did. His previous attorney, who represented him through the plea, also testified that she believed he understood the plea agreement.

{¶ 13} Additionally, Wang has at least some familiarity with the English language. As stated in his brief, "he studied English in China for five years before coming to the United States. He can read and write English with some proficiency, but has trouble with the spoken language." Wang himself made comments to that effect at the plea hearing, stating that "I can write, I can read, but listening and speaking, limited," and then also stating that he had "two years full-time student in college, teacher's college, and another three - - two years continuing education in teaching English and education. That's my education background. Also, I have eight years as a school master in China." His most recent trial attorney, during the hearing to withdraw the plea, also stated that he met with Wang "several times on my own without an interpreter" and that Wang "does have some English language skills" and that they "were able to communicate back and forth" about the case. Wang agreed.

{¶ 14} Moreover, after thoroughly reviewing the plea hearing transcript, it appears that Wang was not impeded by the language. He appeared to understand the proceedings and

6.

occasionally personally responded to questions asked by the judge.  He raised concerns he had with the plea and generally responded that he understood when queried about his understanding of an issue.  At one point Wang indicated he did not understand, and after a more thorough explanation, he stated that he understood.

{¶ 15} We, therefore, do not find that there was a language barrier that affected the plea.

### 2.  Crim.R. 11(C)(2)(b)

{¶ 16} Wang contends that Crim.R. 11(B)(1) and (C)(2)(b) were violated, both through the plea form and during the plea colloquy, in that in both instances he was not informed of the effect of his guilty plea - that it was a complete admission of guilt.

{¶ 17} Crim.R. 11(C)(2)(b) requires a trial court inform the defendant and determine that he understands (1) "the effect of the plea of guilty or no contest," and (2) "that the court, upon acceptance of the plea, may proceed with judgment and sentence."  A trial court satisfies the requirement of informing a defendant of the effect of a plea when it advises a defendant of the appropriate language under Crim.R. 11(B).  *State v. Jones*, 2007-Ohio-6093, ¶ 25, 51.  Crim.R. 11(B)(1) requires a trial court inform a defendant that "'[t]he plea of guilty is a complete admission of the defendant's guilt."

{¶ 18} Wang contends that the trial court failed to inform him that his plea of guilty is a complete admission of guilt.[3]  We agree that Wang was not specifically notified at the plea

---

[3]   In his appellate brief, it appears that Wang also argues that the trial court did not inform him "that the court could proceed directly to sentencing once it accepted the plea."  However, in his reply brief, he indicates that that language was "superfluous" and that he "merely alleges that he was not advised, in the plea [form] or by the trial court, that a plea of guilty is a complete admission of guilt."  Nonetheless, we note that he was

7.

hearing that his plea of guilty is a complete admission of his guilt. However, our focus is not on the exact verbiage, but "on whether the dialogue between the court and the defendant demonstrates that the defendant understood the consequences of his plea." *Dangler* at ¶ 12. As we have previously stated,

> In [*State v.*] *Griggs*, . . . 2004-Ohio-4415, . . .¶ 14, the Supreme Court of Ohio recognized that a trial court's failure to inform the defendant of the effect of a guilty plea, specifically, is subject to a unique analysis because "[a] plea of guilty *is* a complete admission of guilt." . . . That is, when a defendant affirmatively indicates that he or she is "guilty" of the charge, it is - necessarily and patently - a complete admission of guilt. In other words, "a complete admission of guilt" is more than just the *effect* of a guilty plea; it is the *very nature* of a guilty plea. For that reason, "a defendant who has entered a guilty plea without asserting actual innocence is presumed to understand that he has completely admitted his guilt. In such circumstances, a court's failure to inform the defendant of the effect of his guilty plea as required by Crim.R. 11 is presumed not to be prejudicial." *Id.* at ¶ 19. (Emphasis sic).

*State v. Hubbard*, 2025-Ohio-5604, ¶ 27 (6th Dist.), quoting *State v. Willis*, 2019-Ohio-1182, ¶ 16 (6th Dist.). Here, there was no claim of actual innocence, and a review of the plea transcript shows that Wang understood that he was admitting his guilt to the charges and specifications. He was specifically told that he was going to be asked if he was "prepared to make a complete admission to the allegations against" him once the court read all the charges and potential penalties. The trial court then went through each charge and related specification, if applicable, and Wang pled guilty to each. He was also asked if he went through the plea form and understood it, to which he responded in the affirmative; and the plea form does specifically say that "a plea of guilty is a complete admission of guilty [sic]." We therefore find that the

---

informed that the court could proceeding directly to sentencing in both the plea form and at the hearing.

dialogue between the court and Wang establishes that the trial court sufficiently conveyed, and Wang understood, that a guilty plea was a complete admission of guilt. Therefore, we do not find that the trial court completely failed to comply with Crim.R. 11(C)(2)(b).

### 3.  Crim.R. 11(C)(2)(a)

{¶ 19} Wang also maintains that the trial court failed to comply with Crim.R. 11(C)(2)(a), which requires that the trial court "[d]etermin[e] that the defendant is making the plea voluntarily, with understanding of the nature of the charges and of the maximum penalty involved, and if applicable, that the defendant is not eligible for probation or for the imposition of community control sanctions at the sentencing hearing."

### a.  Maximum Prison Term

{¶ 20} First, Wang contends that the plea form erroneously informed him that a prison term was not mandatory regarding the three counts of attempted murder and the three counts of felonious assault. Wang claims that prison was mandatory as firearm specifications were attached, citing to *State v. Logan*, 2025-Ohio-1772 and *State v. Ridener*, 2025-Ohio-2845 (6th Dist.). Wang is correct that a prison term is mandatory for any underlying felony offense when a defendant is found guilty of a corresponding firearm specification, *Logan* at ¶ 2, 25, and that the mandatory nature of these sentences was not included in the plea form. Nonetheless, at the plea hearing, the trial court made the following statement in which Wang was informed of that these sentences were mandatory:

> . . . On Counts 5, 6, and 7, attempted murder, all felonies of the first degree and with specifications for firearm and forfeiture of a weapon, there's a potential *mandatory* minimum definite term of three to 11 years, up to 16-and-a-half years as a maximum indefinite term on each charge. Each comes with a possible $20,000 fine, two to five years of post-release control, and three years on each

firearm specification.  On Counts 8, 9, and 10, felonious assault, felonies of the second degree, each of them come with a *mandatory* minimum definite term of two to eight years, a maximum indefinite term of up to 12 years, up to a $15,000 fine, post-release control of 18 months to three years.  8, 9, and 10 also have a specification for a firearm, and each of those specifications comes with three years in prison.  (Emphasis added.)

{¶ 21} Thus, any misconception Wang might have had based upon the plea form was corrected in the plea hearing itself as the trial court properly informed him of the mandatory nature of his sentence.

### b.  Post-Release Control

{¶ 22} Additionally, Wang alleges numerous errors regarding the information provided to him regarding post-release control.  Specifically, he claims: (1) that the plea form failed to inform him that post-release control would be mandatory for the three counts of attempted murder and the three counts of felonious assault, (2) although the plea form informed him that "'a period of supervision by the Adult Parole Authority after release from prison is mandatory on some of the charges' to which he pleaded, … it doesn't identify for which charges, and then erroneously informs Wang that he 'will have five (5) years of control' for 'some of the offenses,'" (3), although the plea form informed him that if he committed a new felony while on post-release control, he could receive an additional consecutive sentence for the violation "of the greater of one year or the time remaining on post[-]release control," Wang was not informed "of the 'greater than one year or the time remaining on post[-]release control' aspect of the sentence" at the plea hearing, and (4) at the plea hearing, although Wang was informed that he was subject to post-release control, he was not informed as to the mandatory or discretionary nature of the periods of post-release control.

10.

{¶ 23} We note that Wang has alleged the plea form omitted certain information. However, as discussed above, we look to the plea colloquy to see whether the trial court complied with Crim.R. 11(C).

{¶ 24} At his plea hearing, Wang was informed that Counts 5, 6, and 7 came with "two to five years of post-release control," Counts 8, 9, and 10 came with "post-release control of 18 months to three years," and Counts 11 and 12 came with "two years of post-release control." The court then had the following conversation with Wang:

THE COURT: … And you understand that if, after the service of your period of incarceration, you are released from custody, you would be on a period of post-release control?
INTERPRETER: Yes, I know.
THE COURT: And you would have a bunch of rules that you have to follow on post-release control. You understand that?
THE INTERPRETER: Yes.
THE COURT: And if you violated once, you could be back in prison up to nine months. And if you violated multiple times, you could be back in prison up to 50 percent of your maximum term.
THE INTERPRETER: I understand.
THE COURT: If you committed a new felony while you are on post-release control, do you understand that you could be punished for the new offense, and more time could be added to your term in this case?
THE INTERPRETER: I understand.
THE COURT: The amount of time that could be imposed would be one year or the time that's remaining on your post-release control, and it would have to be imposed consecutively to any new felony time. Do you understand that?
THE INTERPRETER: I understand.

{¶ 25} Pursuant to R.C. 2967.28(B) and (C), Wang was subject to a minimum of two years, up to a maximum of five years, of post-release control for Counts 5, 6, and 7, a minimum of 18 months up to three years for Counts 8, 9, and 10, and up to two years of discretionary post-release control for Counts 11 and 12. R.C. 2967.28(G)(1) states that "[i]f an offender is

11.

simultaneously subject to a period of parole under an indefinite or life sentence and a period of post-release control, or is simultaneously subject to two periods of post-release control, the period of supervision that expires last shall determine the length and form of supervision for all the periods and the related sentences." According to R.C. 2967.28(G)(1) then, the maximum term of post-release control to which Wang would be subject is a minimum of two years up to a maximum of five years. He was informed of the two-to-five-year term at the plea hearing.[4] Wang disputes that he was made aware of the mandatory nature of the post-release control, pointing to the trial court's statement that "Each [of the three counts of attempted murder] comes with a possible $20,000 fine, two to five years of post-release control, and three years on each firearm specification." Wang contends that the term "possible" applies to the term of post-release control as well as the fine. However, we find it clear from the context of the sentence, where possible is preceded by the word "a," that "possible" references only the fine, and that he was informed he would have "two to five years of post-release control." The mandatory nature of the post-release control is also made clear in the court's subsequent question to Wang as to whether he understood that, after incarceration, he "*would* be on a period of post-release control." (Emphasis added.) Therefore, we cannot say that the trial court completely failed to comply with Crim.R. 11(C)(2)(a) regarding the maximum term of Wang's post-release control or the mandatory or discretionary nature of that term.

{¶ 26} With regard to Wang's argument that he wasn't informed "of the 'greater than one year or the time remaining on post[-]release control' aspect of the sentence, at the plea hearing

---

[4] To the extent that the plea form improperly stated that Wang was subject to five years of post-release control, the error was corrected at the plea hearing.

he was asked if he understood that "[t]he amount of time that could be imposed would be one year or the time that's remaining on your post-release control, and it would have to be imposed consecutively to any new felony time." While the "greater than" aspect was not stated in the hearing, we can look to the plea form to clear up any ambiguity as to whether Wang understood which of the two timeframes would apply. *See Williams*, 2025-Ohio-2331, at ¶ 36 (6th Dist.). The plea form includes the relevant "greater than" language. Therefore, we do not find a complete failure to comply with this requirement.

### c. Eligibility for Probation or Community Control

{¶ 27} Wang also contends that the trial court failed to orally inform him that he was ineligible for probation or community control, whereas the plea form informed him "that he could be eligible for 'non-prison sanctions' on 'some of the offenses,' but doesn't say which ones."

{¶ 28} We do not find that Wang's argument concerning the trial court's alleged failure to inform him that he was ineligible for probation or community control to be a complete failure under Crim.R. 11(C)(2)(a). While he was informed in the plea form that the court could "impose non-prison sanctions" on "some of the charges," based upon the circumstances of this case, where he was pleading guilty to charges that resulted in mandatory and life sentences, Wang was aware that he was going to serve actual incarceration. Previously, in cases where defendants were aware that they were going to be incarcerated, courts have found substantial compliance with the Crim.R. 11(C)(2)(a) requirement that they be informed that they were ineligible for probation. *See State v. Nero,* 56 Ohio St.3d 106, syllabus (1990) ("Where the circumstances indicate that the defendant knew he was ineligible for probation and was not

13.

prejudiced by the trial court's failure to comply with Crim.R. 11(C)(2)(a), the trial court's acceptance of the defendant's guilty plea to the nonprobationable crime of rape without personally advising the defendant that he was not eligible for probation constitutes substantial compliance with Crim.R. 11."); *State v. Hurst*, 2001 WL 108761 (6th Dist. Feb. 9, 2001) (trial court substantially complied with Crim.R. 11(C)(2)(a) where "appellant was informed of the maximum potential sentences he faced and was told several times that he was facing an actual term of incarceration which would clearly preclude him from being placed on probation or community control sanctions a[t] the time of sentencing."). While it is not clear that the "substantial compliance" standard has any application after *Dangler*, at a minimum, previous caselaw finding "substantial compliance," is relevant to show that there was not a complete failure to meet a necessary Crim.R. 11(C)(2) notification. As such, based upon the circumstances here, we cannot find that the trial court completely failed to comply with this aspect of Crim.R. 11(C)(2)(a).

### 4. Failure to Establish Prejudice

{¶ 29} As Wang has only argued that the trial court failed to comply with the nonconstitutional requirements of Crim.R. 11(C)(2), and as we have not found any of the alleged failures to be complete, Wang was required to demonstrate prejudice. Wang has not presented this court with any evidence, nor even made any argument, that he would not have entered the plea had he been fully informed of the information he claims he was unaware.

{¶ 30} Therefore, Wang's first assignment of error is found not well-taken.

14.

## IV.  Second Assignment of Error

### A.  Arguments

{¶ 31} Wang asserts that the trial court did not properly impose post-release control.

### B.  Standard of Review

{¶ 32} We review felony sentences under R.C. 2953.08(G)(2).  *State v. Purley*, 2022-Ohio-2524, ¶ 8 (6th Dist.).  R.C. 2953.08(G)(2) allows an appellate court to increase, reduce, or otherwise modify a sentence, or vacate the sentence and remand for resentencing if the court clearly and convincingly finds that either of the following apply: (1) "the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13, division (B)(2)(e) or (C)(4) of section 2929.14, or division (I) of section 2929.20 of the Revised Code" or (2) "the sentence is otherwise contrary to law."  Clear and convincing evidence is defined as "'that measure or degree of proof which is more than a mere "preponderance of the evidence," but not to the extent of such certainty as is required "beyond a reasonable doubt" in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.'"  *State v. Gwynne*, 2023-Ohio-3851, ¶ 14, quoting *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus.

### C.  Law

{¶ 33} A trial court is required to provide a defendant with notice of post-release control at the sentencing hearing.  *State v. Bates*, 2022-Ohio-475, ¶ 11, quoting *State v. Jordan*, 2004-Ohio-6085, ¶ 23, *overruled on other grounds by State v. Harper*, 2020-Ohio-2913.  *Also see* R.C. 2929.19(B)(2)(d) and (e).  This notice must include "the term of supervision, whether

post[-]release control is discretionary or mandatory, and the consequences of violating post[-]release control." *Bates* at ¶ 11.

**{¶ 34}** A sentence is contrary to law if a defendant is not properly notified of post-release control. *State v. Humphries*, 2025-Ohio-455, ¶ 33 (8th Dist.), quoting *State v. Bolan*, 2024-Ohio-2640, ¶ 5 (8th Dist.). Moreover, "if a court improperly imposes post[-]release control on a sentence imposed on or after July 11, 2006, it may correct the sentence in accordance with the procedures set forth in R.C. 2929.191, which provides that a court must hold a hearing before issuing the correction." *State v. Sprouse*, 2023-Ohio-2983, ¶ 24 (6th Dist.), quoting *State v. Schleiger*, 2014-Ohio-3970, ¶ 15.

### D. Analysis

**{¶ 35}** Wang contends that there are numerous errors in the trial court's post-release control notifications. As we find one argument to be determinative, we begin there. Wang insists that the post-release control term ordered by the trial court at the sentencing hearing was incorrect. We agree.

**{¶ 36}** As discussed above, Wang was subject to a minimum of two years, up to a maximum of five years, of post-release control. However, at the sentencing hearing the trial court incorrectly informed him that he would be subject to a mandatory five-year term of post-release control. As the trial court did not accurately notify Wang as to the post-release control term to which he would be subject, the post-release control portion of his sentence is contrary to law. We therefore find Wang's second assignment of error well-taken. We further find Wang's remaining arguments pertaining to the imposition of post-release control to be moot.

## V. Conclusion

{¶ 37} The judgment of the Wood County Common Pleas Court is affirmed in part and reversed in part. The portion of the judgment imposing post-release control is reversed and vacated. The remaining portions of the judgment are affirmed. The case is remanded for the limited purpose of properly imposing post-release control pursuant to R.C. 2929.191(C). Pursuant to App.R. 24, the parties are ordered to evenly split the costs incurred on appeal.

Judgment affirmed in part and reversed in part.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.


Gene A. Zmuda, J
_____
JUDGE

Myron C. Duhart, J
_____
JUDGE

Charles E. Sulek, J
CONCUR.
_____
JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.